UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

                Plaintiff,               Case No. 15-cr-20324

                v.                    Hon. David M. Lawson

STEPHEN M. TARPLEY,

                Defendant.

_____/

# **EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

Stephen Tarpley by and through his undersigned counsel, Sidley Austin LLP, respectfully requests that the Court grant him compassionate release from the custody of the United States Bureau of Prisons (the "BOP") pursuant to 18 U.S.C. § 3582(c)(1)(A) on the "extraordinary and compelling" grounds that Mr. Tarpley is at serious risk of grave illness or death as a result of the COVID-19 pandemic, and will remain at such grave risk if he is forced to serve the remainder of his sentence at a BOP facility. Accordingly, Mr. Tarpley respectfully requests an order reducing his sentence to time served. Mr. Tarpley has limited days remaining on his prison sentence, but he needs compassionate release now. He was needlessly placed into solitary confinement in the Special Housing Unit (the "**SHU**") on July 10, 2020 – 32 days prior to his scheduled release date – purportedly for the purposes of quarantining him prior to his release. As discussed in the supporting brief,

1

solitary confinement is an ineffective way to prevent transmission of COVID-19 and it results in decreased medical attention and increased risk of death. (Exh. J at 2.) We respectfully ask the Court to consider this motion on an expedited basis as each day in custody brings renewed and unthinkable risk to Mr. Tarpley's life.

Pursuant to Local Rule 7.1, Mr. Tarpley's counsel sought concurrence on this motion from the government by email on July 13, 2020 and in a telephone conference on July 20, 2020, but at the time of this motion, the government was not prepared to concur in the relief sought.

Mr. Tarpley respectfully requests that this Honorable Court grant his motion for compassionate release.

Dated:          July 20, 2020

Respectfully submitted,


/s/ Paul E. Bateman, Jr.

Paul E. Bateman, Jr. (P78526)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: +1 (312) 853 2223
pbateman@sidley.com

*Attorneys for Defendant*
*Stephen Tarpley*

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

        Plaintiff,           Case No. 15-cr-20324

        v.              Hon. David M. Lawson

STEPHEN M. TARPLEY,

        Defendant.

_____/

# BRIEF IN SUPPORT OF EMERGENCY MOTION FOR COMPASSIONATE RELEASE

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

STATEMENT OF FACTS ................................................................................4

ARGUMENT ......................................................................................................6

I.     Mr. Tarpley Has Met the Administrative Exhaustion Requirement .......................6

II.    There Are Extraordinary and Compelling Reasons For Mr. Tarpley's Release ......6

   A. This Court Has the Authority to Delineate Which "Extraordinary and Compelling"
      Reasons Justify Compassionate Release Other Than Those Expressly Identified in
      Commentary to U.S.S.G. § 1B1.13 ................................................................6

   B. The COVID-19 Pandemic Is An "Extraordinary and Compelling Reason" For
      Compassionate Release ...............................................................................8

   C. Prisons Including are Particularly Vulnerable to COVID-19 .................................9

   D. Mr. Tarpley's Debilitating Conditions Makes Him Highly Vulnerable ...............14

III.   The Relevant § 3553(A) Sentencing Factors Warrant Reducing Mr. Tarpley's
      Sentence To Time Served ...........................................................................21

IV.   Release plan ...............................................................................................24

V.    Supervised Release Conditions ......................................................................25

VI.   Conclusion .................................................................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cotton v. United States*,
    16-20222-8, 2020 WL 3488752 (E.D. Mich. Jun. 26, 2020)....................................18

*Damario Davon Tubbs-Smith v. United States*
    (2020 WL 3618511) .................................................................................. 12, 13, 22

*Miller v. United States*,
    No. CR 16 20222-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020) ...........................7

*Samy v. United States*,
    No. CR 16-20610-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020) ........................7

*United States v. Andrea Nicole Tate*
    (17-cr-30037) ........................................................................................................13

*United States v. Amarrah*,
    17-20464, 2020 WL 2220008 (E.D. Mich. Jul. 7, 2020)....................................14, 18

*United States v. Atwi*,
    No. 18-20607, 2020 WL 1910152 (E.D. Mich. Apr. 20, 2020)..................................7

*United States v. Beck*,
    No. 1:13-CR-186-6, 2019 WL 2716505 (M.D.N.C. June 28, 2019) .........................17

*United States v. Brant*,
    2:18-CR-20155-TGB-MKM-1, 2020 WL 3605282 (E.D. Mich. Jul. 2,
    2020).....................................................................................................................16

*United States v. Dawson*,
    No. 18-40085-HLT, 2020 WL 1812270 (D. Kan. Apr. 9, 2020)...............................19

*United States v. Fitch*,
    No. 2:04-CR-262 JCM (PAL) D. Nev. July 02, 2020)............................................13

*United States v. Hammond*,
   CR 02-294, 2020 WL 1891980 (D.D.C. Apr. 16, 2020) ........................................ 17

*United States v. Hansen*,
   1:07-cr-00520-KAM-2, 2020 WL 1703672 (E.D. N.Y. Apr. 8, 2020) ..................... 17

*United States v. Harrell*,
   No. 13-20198, 2020 WL 2768883 (E.D. Mich. May 28, 2020)................................ 18

*United States v. Jelinek*,
   No. 15-20312, 2020 WL 3833125 (E.D. Mich. Jul. 8, 2020) .................................. 22

*United States v. Joling*,
   6:11-CR-60131-AA, 2020 WL 1903280 (D. Or. Apr. 17, 2020) ............................. 17

*United States v. Morgan*,
   No. 214CR329JCMGWF, 2019 WL 1427538 (D. Nev. Mar. 29, 2019) .................. 17

*United States v. Nazzal*,
   2020 WL 3077948 (E.D. Mich. Jun. 10, 2020).................................................. 17, 18

*United States v. Owens*,
   No. 97 Cr. 2546 (CAB), ECF No. 93 (S.D. Cal. Mar. 20, 2020)................................ 7

*United States v. Readus*,
   No. 16-20827, 2020 WL 2572280 (E.D. Mich. May 21, 2020)................................ 18

*United States v. Redd*,
   2020 WL 1248493 (E.D. Va. Mar. 16, 2020) ........................................................... 7

*United States v. Reddy*,
   No. 13-CR-20358, 2020 WL 2320093 (E.D. Mich. May 11, 2020) ........................... 7

*United States v. Rodriguez*,
   No. 03-00271, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) ..................................... 19

*United States v. York*,
   No. 3:11-CR-76, 2019 WL 3241166 (E.D. Tenn. July 18, 2019)............................. 17

*United States v. Young*,
   2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020)........................................................... 7

iii

*United States v. Zukerman*,
No. 16 CR. 194 (AT), 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020) .......................... 19

**Statutes**

*18 U.S.C. 3553(a)(1)* ......................................................................................... 21

18 U.S.C. §§922(g)(l) & 924(a)(2) .......................................................................... 4

18 U.S.C. §1029(a)(4) ............................................................................................. 4

18 U.S.C. § 3553(a) ..................................................................................... *passim*

18 U.S.C. § 3582(c)(1)(A)(i) ............................................................ 2, 6, 8, 21

19 U.S.C. 3553(a)(2)(c) ......................................................................................... 22

19 U.S.C. 3553(a)(2)(d*)* ...................................................................................... 23

MCL 445.65 ............................................................................................................ 5

MCL 750.157N2 .................................................................................................... 5

U.S.S.G. § 1B1.13 ................................................................................................... 6

**Other Authorities**

Amanda Klonsky, Op-Ed, *An Epicenter of the Pandemic Will Be Jails and
Prisons, If Inaction Continues*, New York Times, Mar. 16, 2020 .............................. 9

Blakinger and Schwarzapfel, *How Can Prisons Contain Coronavirus When
Purell is Contraband?* A.B.A.J., Mar. 13, 2020 ......................................................... 9

*Bureau of Prisons*, COVID-19 Cases, https://bit.ly/32rPMjK ........................................ 10

CDC, *Evidence used to update the list of underlying medical conditions that
increase a person's risk of severe illness from COVID-19*,
https://bit.ly/2CjJGHB ........................................................................................ 20

CDC, *How to Protect Yourself & Others*, https://bit.ly/32sH8Si ................................... 8

CDC, *People of Any Age with Underlying Medical Conditions*,
https://bit.ly/2DU1wBD .......................................................... 1, 15, 20, 21

Keri Blakinger and Keegan Hamilton, *'I Begged Them To Let Me Die':
How Federal Prisons Became Coronavirus Death Traps*, The Marshall
Project, Jun. 18, 2020, https://bit.ly/3jgIZQ7 ............................................. 12

Gonsalves et al., *Achieving a Fair and Effective COVID-10 Response: An
Open Letter to Vice-President Mike Pence and other Federal, State and
Local Leaders from Public Health and Legal Experts in the United
States*, Yale Law School, March 2, 2020, https://bit.ly/2W0V6oS ............................ 9

Johns Hopkins University, *COVID-19 Dashboard*,
https://coronavirus.jhu.edu/map.html ........................................................ 8

Letter from Jerrold Nadler, Chairman of the House Judiciary Comm., and
Karen Bass, Chairwoman of the House Judiciary Subcomm. on Crime,
to U.S. Attorney Gen. William Barr, Mar. 19, 2020,
https://bit.ly/396mZmf ....................................................................... 10

Letter from Julie Abbate et al., Former Deputy Chief, Special Litig. Section,
Civil Rights Div., to President Donald J. Trump, Mar. 27, 2020,
https://bit.ly/2ZCTuoZ ....................................................................... 10

OSHA Notice of Alleged Safety or Health Hazards filed by Shane Fausey,
President of Council of Prison Locals 33, Mar. 31, 2020,
https://bit.ly/3h93qfP ........................................................................ 12

Timothy Williams, *Coronavirus Cases Rise Sharply in Prisons Even as
They Plateau Nationwide*, New York Times, Jun. 16, 2020,
https://nyti.ms/3fEnRAP ...................................................................... 10

Keegan Hamilton, *EXCLUSIVE: Whistleblower Warned of Coronavirus
Danger in Prison Where a Woman Just Died After Giving Birth*, Vice
News, Apr. 29, 2020, https://bit.ly/2CjEgwh .................................................. 12

**INTRODUCTION**

Stephen Tarpley respectfully moves this Honorable Court for an order reducing his sentence to time served based on the "extraordinary and compelling reasons" discussed herein. Mr. Tarpley, age 52, is likely to become gravely ill and could possibly die if he remains incarcerated at FCI Greenville. Mr. Tarpley suffers from multiple severe and debilitating illnesses. He suffers from prostate cancer and Type II Diabetes Mellitus, which he developed while in prison, and he is obese (BMI >30). As a result of his diabetes and obesity, Mr. Tarpley is at risk of cardiovascular disease, the predominant risk factor for death from COVID-19. (Exh. C.) These conditions place him at "increased risk" (the highest risk category used by the Center for Disease Control and Prevention (the "CDC")) of severe illness from COVID-19. CDC, *People of Any Age with Underlying Medical Conditions*, https://bit.ly/2DU1wBD. In addition, as discussed further below, recent medical records indicate that Mr. Tarpley is not receiving the necessary medical care for his cancer and, despite signs of active cancer, his forthcoming specialist appointments have been cancelled. (Exh. C.) Mr. Tarpley was moved into solitary confinement in the Special Housing Unit (the "SHU") on Friday, July 10, 2020 – 32 days prior to his scheduled release date – purportedly for the purposes of quarantining him prior to his release. Solitary confinement results in decreased medical attention and increased risk of death and it is an ineffective way to prevent transmission of COVID-19. (Exh. J at 2.)

1

Cells in the SHU rarely have intercoms or other ways for sick inmates to contact officers in an emergency. This is particularly dangerous for those with COVID-19 infection since many patients with COVID-19 descend suddenly and rapidly into respiratory distress. (Exh. F at *17.) Moving Mr. Tarpley into the SHU with more than one month remaining before his release date has needlessly increased the risk to his life posed by COVID-19. Additionally, between Friday, July 10 and Wednesday, July 15 prison staff refused to provide Mr. Tarpley with his daily diabetes medication without explanation, despite the fact that this medication is a vital part of Mr. Tarpley's medical treatment plan. It was only after a request from the undersigned attorneys that Mr. Tarpley was provided with a seven-day supply of his medication. Mr. Tarpley's vulnerability to COVID-19 and the BOP's clear failure to care for his medical needs are extraordinary and compelling reasons that warrant a grant of compassionate release.

As amended by the First Step Act, the compassionate release statute allows courts to reduce sentences for "extraordinary and compelling" reasons. 18 U.S.C. § 3582(c)(1)(A)(i). The question of compassionate release turns upon the Court's consideration of whether: (1) the defendant has exhausted his administrative rights with the BOP; (2) there are "extraordinary and compelling reasons" for the release; (3) any reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (4) relevant sentencing factors under § 3553(a) do not outweigh the

2

'extraordinary and compelling reasons' warranting compassionate release.

As set forth more fully below, each of these factors weigh in favor of granting Mr. Tarpley compassionate release. *First*, Mr. Tarpley has met the exhaustion requirement. More than thirty days has elapsed since Mr. Tarpley made his administrative relief request to the Warden at FCI Greenville. *Second*, extraordinary and compelling reasons exist to grant relief in light of COVID-19. The global COVID-19 pandemic requires people to take basic preventative actions, which are impossible for inmates to undertake. It has been widely reported that the BOP has carried out minimal testing of inmates and, as a result, COVID-19 outbreaks may go unnoticed and untreated for long periods. (Exh. F at *5.) It is only a matter of time before there is a COVID-19 outbreak at FCI Greenville, if one is not already underway. Mr. Tarpley's debilitating conditions are extraordinary and compelling reasons to grant relief. *Third*, reducing Mr. Tarpley's sentence is consistent with applicable policy statements issued by the Sentencing Commission because the Court has the authority to find that Mr. Tarpley's health conditions are an extraordinary and compelling reason justifying compassionate release. *Finally*, a reduction of Mr. Tarpley's sentence would not undermine § 3553(a) factors because Mr. Tarpley has served the vast majority of his sentence, he is not a danger to society, and his release plan ensures a safe transition into the community where he will follow professional guidelines to protect himself from COVID-19.

## STATEMENT OF FACTS

On May 18, 2015, Stephen Tarpley was charged in a criminal complaint with one count of possession of Device Making Equipment, 18 U.S.C. §1029(a)(4), and one count of Felon In Possession Of A Firearm, 18 U.S.C. §§922(g)(l) & 924(a)(2). (ECF No. 17 at 1.) On September 23, 2015 Mr. Tarpley pleaded guilty to both counts. ECF 35. The Court sentenced Mr. Tarpley on February 19, 2016 to 70 months of imprisonment, to run concurrently. (ECF 42.) Mr. Tarpley is now in BOP custody at FCI Greenville. He has served approximately 5 years and 2 months, or 88% of his sentence. His expected date of release is August 11, 2020. (Exh. A at 2.)

Mr. Tarpley suffers from multiple severe and debilitating illnesses. He suffers from prostate cancer, which he was diagnosed with while in prison. His cancer appears to have been unresponsive to radiation treatment and is showing signs of activity. (Exh. C.) Mr. Tarpley's oncologist recently referred him to a urologist to discuss surgery, but that appointment was cancelled by the BOP without explanation. (Exh. C.) Mr. Tarpley also suffers from Type II Diabetes Mellitus, which he also developed while in prison, and he is obese (BMI >30). (Exh. C.) As a result of his diabetes and obesity, Mr. Tarpley is at risk of cardiovascular disease, the predominant risk factor for death from COVID-19. (*Id.*) Dr. Devra Marcus, a retired infectious diseases specialist, reviewed Mr. Tarpley's medical records and confirmed that he is "unable to protect himself from COVID-19 in prison and

[that] the only way to mitigate the risk to his health and life is to release him so that he can get prompt attention for his prostate cancer and better manage his Type II Diabetes and obesity." Mr. Tarpley has suffered from other conditions while incarcerated, including debilitating boils, which have required extensive treatment, and recurring neck pain resulting from degenerative risk disorder. (Exh. C at 27 and 479.)

Mr. Tarpley has a detainer on his file from the Oakland County Sheriff's department. (Exh. H.) The detainer relates to a sentence for state crimes related to those for which Mr. Tarpley is currently serving time in federal prison. (Exh. D, at 5.) Mr. Tarpley pleaded guilty to one count of Identify Theft, contrary to MCL 445.65, and possession of fraudulent financial transaction device, contrary to MCL 750.157N2 on July 14, 2016 and was sentenced to a minimum of 22 months and a maximum of 15 years, to be served concurrently with the federal sentence. (Exh. E.) Mr. Tarpley has served more than his minimum state sentence. He will therefore be eligible for parole as soon as he enters the custody of MDOC, but not before. This Court should order Mr. Tarpley's immediate release, so that he may be taken into MDOC custody and commence the state parole process. Every day that Mr. Tarpley remains in federal custody brings renewed and unthinkable risk to his life.

## ARGUMENT

### I.     Mr. Tarpley Has Met the Administrative Exhaustion Requirement

As amended, § 3582(c)(1)(A)(i) permits courts to consider motions filed by the defendant so long as "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" On June 17, 2020, Mr. Tarpley's attorneys filed an administrative relief request with Warden Eric Williams at FCI Greenville on his behalf seeking compassionate release on the same grounds as submitted herein. (Exh. B.) No response has been received to that request and thirty days have elapsed from the receipt of such a request by the Warden. Mr. Tarpley had not submitted a request prior to this as he was told by his counselor at FCI Greenville that he was ineligible for release. Mr. Tarpley is filing this motion now as he has exhausted his administrative remedies.

### II.    There Are Extraordinary and Compelling Reasons For Mr. Tarpley's Release

#### A.    This Court Has the Authority to Delineate Which "Extraordinary and Compelling" Reasons Justify Compassionate Release Other Than Those Expressly Identified in Commentary to U.S.S.G. § 1B1.13

The compassionate release statute, as amended by the First Step Act, authorizes courts to grant relief whenever "extraordinary and compelling reasons" warrant a reduction, consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a) and applicable policy statements issued by the Commission, regardless of the BOP's position.

6

Courts have found "extraordinary and compelling reasons" in circumstances wholly apart from, or in combination with, the limited factors on which the BOP narrowly rely. *See United States v. Owens*, No. 97 Cr. 2546 (CAB), ECF No. 93 (S.D. Cal. Mar. 20, 2020); ("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence…." (citation and internal quotation marks omitted)); *United States v. Redd*, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020). The government has conceded this point in *United States v. Young,* stating that "federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020).

Now, as the BOP faces a rapidly escalating and changing health crisis because of COVID-19, courts have been recognizing that at-risk inmates, like Mr. Tarpley, meet the standard for compassionate release. *See*, *e*, *United States v. Reddy*, No. 13-CR-20358, 2020 WL 2320093, at *4 (E.D. Mich. May 11, 2020); *United States v. Atwi*, No. 18-20607, 2020 WL 1910152 (E.D. Mich. Apr. 20, 2020); *Samy v. United States*, No. CR 16-20610-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020); *Miller v. United States*, No. CR 16 20222-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020). The pandemic alone is an extraordinary and compelling circumstance, and when presented with an offender with pre-existing health problems that render them vulnerable to severe complications and

death from COVID-19, courts are exercising their authority to grant release under § 3582(c)(1)(A)(i).

### B. The COVID-19 Pandemic Is An "Extraordinary and Compelling Reason" For Compassionate Release

COVID-19 is an extraordinary and compelling reason for a court to grant relief under compassionate release. On March 11, 2020, the World Health Organization ("WHO") officially classified the spread of COVID-19, the disease caused by the novel coronavirus, as a pandemic. In the months since this pronouncement, COVID-19 has continued to spread at an alarming rate. As of July 16, 2020, more than 13.666 million people have been infected globally and nearly 586,369 people have died. In the United States, more than 3.54 million people have been infected and more than 138,000 people have died. Johns Hopkins University, *COVID-19 Dashboard*, https://coronavirus.jhu.edu/map.html. These numbers continue to increase sharply every day. To stem the spread of the disease, the CDC has broadly advised people to take basic preventive actions, including avoiding crowds, keeping six feet distance from others, wearing a face covering, disinfecting surfaces, and frequently washing their hands or using hand sanitizer. CDC, *How to Protect Yourself & Others*, Apr. 24, 2020, https://bit.ly/32sH8Si.

### C.   Prisons Including are Particularly Vulnerable to COVID-19

Correctional facilities are uniquely vulnerable to the spread of COVID-19. Public health experts have warned that incarcerated individuals "are at special risk of infection" and are "less able to participate in proactive measures to keep themselves safe." Gonsalves et al., *Achieving A Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State and Local Leaders from Public Health and Legal Experts in the United States*, Yale Law School, March 2, 2020, https://bit.ly/2W9V6oS. Indeed, the conditions in BOP facilities provide an optimal environment for COVID-19 to spread. *See* Amanda Klonsky, Op-Ed, *An Epicenter of the Pandemic Will Be Jails and Prisons, If Inaction Continues*, New York Times, Mar. 16, 2020, https://nyti.ms/2ZBVvBV. Inmates share crowded communal living spaces, such as cells, bathrooms, dining halls, and recreational space, which makes it impossible for inmates, including Mr. Tarpley, to practice physical distancing and adequate sanitization. To make matters worse, hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission, is deemed forbidden "contraband" in BOP facilities because of its alcohol content. Blakinger and Schwarzapfel, *How Can Prisons Contain Coronavirus When Purell is Contraband?* A.B.A.J., Mar. 13, 2020, https://bit.ly/2Zzsx5q.

Recognizing the unique risks that correctional facilities pose to both inmates and employees, members of Congress asked the BOP and the United States Department of Justice (the "DOJ") on March 19, 2020, to release federal inmates who are vulnerable to

9

COVID-19. Letter from Jerrold Nadler, Chairman of the House Judiciary Comm., and Karen Bass, Chairwoman of the House Judiciary Subcomm. on Crime, to U.S. Attorney Gen. William Barr, Mar. 19, 2020, https://bit.ly/396mZmf ("DOJ and BOP must also do all they can to release as many people as possible who are currently behind bars and at risk of getting sick."). On March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of medically vulnerable inmates who have already served a majority of their sentence. Letter from Julie Abbate et al., Former Deputy Chief, Special Litig. Section, Civil Rights Div., to President Donald J. Trump, Mar. 27, 2020, https://bit.ly/2ZCTuoZ.

On March 24, 2020 only three federal inmates had tested positive for COVID-19. As of July 16, 2020, 8,853 federal inmates and 926 BOP staff had tested positive for COVID-19 and of those, 95 inmates and 1 BOP staff member have died. *Bureau of Prisons*, COVID-19 Cases, https://bit.ly/32rPMjK. On June 16, 2020 the New York Times reported that the "number of prison inmates known to be infected has doubled during the past month to more than 68,000 [and that] [p]rison deaths tied to the coronavirus have also risen, by 73 percent since mid-May." Timothy Williams, *Coronavirus Cases Rise Sharply in Prisons Even as They Plateau Nationwide*, New York Times, Jun. 16, 2020,

https://nyti.ms/3fEnRAP. The increase in diagnosed cases indicates an uncontrolled spread of COVID-19. Through extensive research that included dozens of interviews with BOP inmates and their families as well as BOP staff members, the collection and study of internal BOP memos, emails and other documents and the review of photographs and videos, VICE News and the Marshall Project found that "the BOP was unprepared for the pandemic and slow to respond, and that top officials even took measures that contributed to the spread of the virus." Their findings included, among other health and safety failures:

- "Staff ignored or minimized prisoners' COVID-19 symptoms, and mixed the sick and healthy together in haphazard quarantine."

- "The BOP failed to follow its own pandemic response plan…Photos and videos show sick men in bunk beds just two feet apart."

- "Federal officials have allegedly tried to conceal the extent of the outbreak by limiting testing – so that they didn't have to report positive cases – and refusing to recognize one staff death. As of [June 16, 2020], they had completed testing on less than 13 percent of prisoners in BOP-run facilities."

Keri Blakinger and Keegan Hamilton, *'I Begged Them To Let Me Die': How Federal Prisons Became Coronavirus Death Traps*, The Marshall Project, Jun. 18, 2020, https://bit.ly/3jgIZQ7.

11

BOP Staff have filed an OSHA complaint alleging BOP has "failed to introduce workplace controls to mitigate or prevent exposure or further exposure to the virus," including at Mr. Tarpley's facility. *See* OSHA Notice of Alleged Safety or Health Hazards filed by Shane Fausey, President of Council of Prison Locals 33, Mar. 31, 2020, https://bit.ly/3h93qfP (noting that at the time of filing, there were 28 confirmed inmate cases, 24 confirmed staff cases and 1 inmate death). Further, in April, after the death of a young woman who recently gave birth at FMC Carswell, a whistleblower complaint from the BOP staff union for Carswell came to light alleging that the BOP was knowingly misleading the American public about conditions in federal prisons. Keegan Hamilton, *EXCLUSIVE: Whistleblower Warned of Coronavirus Danger in Prison Where a Woman Just Died After Giving Birth*, Vice News, Apr. 29, 2020, https://bit.ly/2CjEgwh.

In *Damario Davon Tubbs-Smith v. United States*, 2020 WL 3618511 (E.D. Mich. June 5, 2020), this Court recently granted compassionate release stating:

> Here, Tubbs-Smith has presented "Other Reasons" in combination with his serious medical conditions, to warrant compassionate release. While the COVID-19 pandemic is devastating in every region it invades, prison populations are subject to heightened vulnerability. …Furthermore, the persuasive precedent for granting compassionate release under the current circumstances is overwhelming.

2020 WL 3618511, at *2-*3 (omitting internal citations).

12

Mr. Tarpley is at serious risk of contracting COVID-19 at FCI Greenville. There has been at least two confirmed cases of COVID-19 at FCI Greenville. On July 2, 2020, the district court for the District of Nevada ordered the release of an inmate from FCI Greenville citing the inmate's underlying medical conditions and his vulnerability to COVID-19. "Defendant contends that his advanced age (61) and comorbidities—kidney disease and past failure, heart disease, and hypertension—make him particularly susceptible to COVID-19, and thus warrants immediate release from custody. This court agrees." *United States v. Fitch* (Case No. 2:04-CR-262 JCM (PAL)) (D. Nev. July 02, 2020) (citations omitted). The court further specified that FCI Greenville is unable to protect the inmate from the dangers of contracting COVID-19, noting that "[the defendant's health conditions c]oupled with defendant's age and lack of mobility, the prison is unfit to appropriately address the unique dangers that defendant faces from the ongoing pandemic." *Id. See also United States v. Andrea Nicole Tate* (17-cr-30037) (D. Ill. Jul. 7, 2020), where the court granted compassionate release to a movant who was housed at the female Federal Prison Camp in Greenville, which is located near FCI Greenville, noting:

> "As other courts have noted, the fact a prison has no confirmed open cases today does not provide much assurance in the current environment."… Several other courts have concluded that extraordinary and compelling circumstances warranting a reduction in sentence may be present even when a defendant is housed in a facility without any confirmed cases…

13

*Id.* (internal citations omitted). In another decision handed down on May 7, 2020, this court granted release to a 45 year-old inmate at FCI Loretto, noting:

> FCI Loretto does not have any confirmed cases, and the United States argues that this should be a compelling factor in the Court's analysis…Zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases. The Bureau of Prisons recently discovered this when it found that 70 percent of the inmates it tested were positive for the disease…This disease spreads asymptomatically, which means the Court and the prison system can take no comfort in a lack of confirmed cases, and all parties should be deeply concerned by the lack of universal testing of inmates and staff.
>
> For these reasons, unless and until FCI Loretto implements a universal testing regimen, the Court gives no weight to the zero "confirmed" COVID-19 cases statistic—particularly because BOP is housing detainees together, because the United States could not give the Court any information regarding current testing practices, and because basic disinfecting tools such as soap and hand sanitizer are not universally provided to the population.
>
> *United States v. Amarrah*, 17-20464, 2020 WL 2220008, (E.D. Mich. Jul. 7, 2020),

at *6 (internal citations omitted). The court's analysis is equally applicable to Mr. Tarpley, whose circumstances similarly put him at a significant risk of contracting COVID-19.

### D.   Mr. Tarpley's Debilitating Conditions Makes Him Highly Vulnerable

After reviewing Mr. Tarpley's medical records, Dr. Devra Marcus concluded:

> In my opinion, Mr. Tarpley is unable to protect himself from COVID-19 in prison and the only way to mitigate the risk to his health and life is to release him so that he can get prompt attention for his prostate cancer and better manage his Type II Diabetes and obesity.

(Exh. C.) Mr. Tarpley is an individual who has a higher risk of falling severely ill or dying from COVID-19 for three reasons.

14

*Cancer*: Mr. Tarpley has a history of prostate cancer, and it may again be active. He was initially diagnosed with prostate cancer in 2017, while incarcerated. (Exh. C at 10.) He then received radiation treatment. Recently his PSA levels, a protein produced in the prostate that is an indicator of prostate cancer, have been volatile. (*Id.* at 1.) His prostate is also enlarged. (*Id.*) These symptoms indicate probable progression of his cancer. (*Id.*) Mr. Tarpley's medical records indicate that his treating oncologist, Dr. Walschauser, requested that Mr. Tarpley be referred to a tertiary care urologist in mid-June 2020 for additional evaluation and treatment. (*Id.*) That treatment "might potentially be immunosuppressive". (*Id.*) The CDC has stated that people with weakened immune systems "might be at an increased risk for severe illness from COVID-19" and that this information is based on what the CDC "know[s] at this time" and that "[c]urrently there are limited data and information about the impact of underlying medical conditions and whether they increase the risk for severe illness from COVID-19." CDC, *People of Any Age with Underlying Medical Conditions*, https://bit.ly/2DU1wBD. The severity of his condition and the risk posed to Mr. Tarpley should not be understated, as noted recently by this court (when referring to another condition that the CDC states "might" cause increased risk): "it is still a serious matter that people with moderate-to-severe asthma still "might" be at an increased risk for severe illness. It is also less than reassuring to note that this information could change again." *United States v. Brant*, 2:18-

CR-20155-TGB-MKM-1, 2020 WL 3605282 (E.D. Mich. Jul. 2, 2020) (where the court denied compassionate release to a 26 year old man convicted of two counts of possession with intent to distribute controlled substances, one count of felon in possession of a firearm, and one count of possession of a firearm in furtherance of a drug trafficking crime, who suffered "moderate to severe asthma" and no other underlying conditions and had more than 5 years remaining on his 110 month sentence). Recent medical records, dated July 7, 2020, indicate that Mr. Tarpley's urology appointment has been cancelled. (Exh. C at 1.) The reason for the cancellation was not indicated. (*Id.*) This unexplained cancellation demonstrates that Mr. Tarpley is not receiving the care he requires while he is incarcerated. The "wait and watch" approach of the staff at FCI Greenville to the treatment of Mr. Tarpley's cancer is placing him at risk of suffering from untreated, active cancer at a time when the medical resources of the prison health care system are already stretched to or beyond breaking point. (Exh. J at 2-3.) Courts across the country, including this Court, have granted compassionate release to applicants with a history of, or active, prostate cancer. *See United States v. Nazzal*, 2020 WL 3077948, at *1 (E.D. Mich. Jun. 10, 2020) (releasing an applicant with a history of heart disease, severe asthma, benign prostate cancer, and high blood pressure); *United States v. Joling*, 6:11-CR-60131-AA, 2020 WL 1903280 (D. Or. Apr. 17, 2020) (releasing an applicant with prostate cancer, among other conditions); *United States v. Hammond*, CR 02-294 (BAH),

2020 WL 1891980, at *1 (D.D.C. Apr. 16, 2020) (releasing an application with "recently resurgent prostate cancer"); *United States v. Hansen*, 1:07-cr-00520-KAM-2, 2020 WL 1703672 (E.D. N.Y. Apr. 8, 2020) (prostate cancer). Courts have also considered the inadequacy of care provided by the BOP as grounds for release. *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *7 (M.D.N.C. June 28, 2019) (citing negligent treatment of breast cancer); *United States v. York*, No. 3:11-CR-76, 2019 WL 3241166, at *2 (E.D. Tenn. July 18, 2019) (noting allegation BOP ignored recommendations of outside specialists); *United States v. Morgan*, No. 214CR329JCMGWF, 2019 WL 1427538, at *2 (D. Nev. Mar. 29, 2019) (granting release because of inadequate eye treatment).

   ***Type II Diabetes Mellitus***. Mr. Tarpley has Type II Diabetes Mellitus, putting him at a high risk of death from COVID-19. (Exh. C at 1.) The American Diabetes Association states that "In general, people with diabetes are more likely to experience severe symptoms and complications when infected with a virus" and that prisons "should take aggressive steps to protect both the health of these individuals and larger public health interests in our communities" given the COVID-19 pandemic. (Exh. G at 1.) Courts across the country, including this Court, have granted compassionate release to applicants with diabetes. As this Court recently observed, "the persuasive precedent for granting compassionate release under the current circumstances is overwhelming,

17

particularly for inmates with serious risk factors such as age, diabetes, hypertension, and heart disease, and whose prison disciplinary record suggests a low risk of recidivism and no danger to the community." *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at \*4 (E.D. Mich. Jun. 10, 2020) (omitting internal quotation marks and citations). *See also, United States v. Harrell*, No. 13-20198, 2020 WL 2768883, at \*2 (E.D. Mich. May 28, 2020) (releasing an applicant with hypertension, high cholesterol, and Type II diabetes); *United States v. Amarrah,* 17-20464, 2020 WL 2220008 (E.D. Mich. Jul. 7, 2020) (granting compassionate release to a 45-year-old applicant who suffers from Type II Diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma); *Cotton v. United States,* 16-20222-8, 2020 WL 3488752 (E.D. Mich. Jun. 26, 2020) (granting compassionate release to a 64-year-old pre-diabetic applicant that also suffered obesity, hyperlipidemia, prediabetes, asthma and age); *United States v. Readus*, No. 16-20827, 2020 WL 2572280, at \*3 (E.D. Mich. May 21, 2020) (granting compassionate release to a 33-year-old applicant with severe obesity, severe obstructive sleep apnea, hypertension, and prediabetes); *United States v. Rodriguez*, No. 03-00271, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) (granting compassionate release to inmate who had served 17 years on a 20-year sentence, had health issues including Type 2 Diabetes, essential hypertension, obesity, and liver abnormalities).

18

*Obesity*. Mr. Tarpley is obese, putting him at high risk of death from COVID-19. Mr. Tarpley has a BMI over 30. According to the CDC, anyone with a BMI of 30 or higher is at higher risk for severe illness from COVID-19. (Exh. C at 1.) Other courts have noted a person's obesity, along with other factors, in granting compassionate release in light of the COVID-19 pandemic. *See United States v. Dawson*, No. 18-40085-HLT, 2020 WL 1812270, at *5 (D. Kan. Apr. 9, 2020) ("The court finds that Mr. Dawson has established that his obesity puts him at an increased risk for severe illness if he were to contract COVID-19, which weighs in favor of finding exceptional reasons."); *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (noting that applicant's obesity placed him "at higher risk for severe illness from COVID-19").

Further, as a result of his diabetes and obesity, Mr. Tarpley is at risk of cardiovascular disease, the predominant risk factor for death from COVID-19. (Exh. C at 1.) According to the CDC, patients with Type II Diabetes Mellitus <u>OR</u> obesity (with a BMI of > 30) are at "increased risk" (the highest risk category used by the CDC) of severe illness from COVID-19. CDC, *People of Any Age with Underlying Medical Conditions*, https://bit.ly/2DU1wBD. The CDC considers that there is "consistent evidence from multiple small studies or a strong association from a large study" that these conditions place patients at increased risk of severe illness from COVID-19. CDC, *Evidence used to*

*update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19*, https://bit.ly/2CjJGHB. Mr. Tarpley suffers from both of these medical conditions, placing him in the high-risk category of patients. The concurrence of these conditions with potentially active and untreated prostate cancer places Mr. Tarpley at very high risk of death or serious illness if he were to contract COVID-19 and are extraordinary and compelling grounds upon which this Court should grant his release.

Further, on Friday, July 10 Mr. Tarpley was moved into the SHU, purportedly for the purposes of quarantining him prior to his release. Between July 10, 2020 and July 15, 2020, prison staff refused to provide Mr. Tarpley with his daily diabetes medication, without explanation. On July 15 Mr. Tarpley received a seven-day supply of his medication, following a request from the his attorneys for them to do so. Solitary confinement results in decreased medical attention and increased risk of death and it is an ineffective way to prevent transmission of COVID-19. (Exh. J at 2.) In addition to the unexplained cancellation of his urology appointment, leaving his prostate cancer potentially untreated, Mr. Tarpley was denied access to his medication for four days, placing him at an even greater risk of severe illness or death. The CDC recommends individuals with diabetes "continue taking [your] diabetes pills and insulin and usual" and "have at least a 30-day supply of [your] diabetes medication". CDC, *People of Any Age with Underlying Medical Conditions*, https://bit.ly/2DU1wBD.

### III.    The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Tarpley's Sentence To Time Served

When extraordinary and compelling reasons have been established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Under all of the circumstances in this case, the Court should conclude that the time that Mr. Tarpley has already served is sufficient to satisfy the purposes of sentencing and that the relevant sentencing factors favor this Court granting relief.

*Nature of offense (18 U.S.C. § 3553(a)(1)):* Mr. Tarpley's current crimes, while serious, did not involve personal violence. Mr. Tarpley also has no recent history of violence. While Mr. Tarpley's criminal history includes armed robbery and attempted armed robbery, for which he served a twenty year sentence, those crimes were committed nearly thirty years ago. (ECF 17 at 3.) Mr. Tarpley has no prison disciplinary incidents that involve violence.

*Mr. Tarpley is not a danger to the community (19 U.S.C. § 3553(a)(2)(c)):* Mr. Tarpley is not a danger to society if released. Oakland County, Michigan, has a detainer on Mr. Tarpley. (Exh. H.) If this Court releases him, Michigan may take him into custody. Mr. Tarpley has served his minimum state sentence, meaning he will be

eligible for parole once he is the custody of MDOC. This court has granted compassionate release in similar circumstances at least once and noted:

> [T]he Government argues that his history of supervised release violations and the fact that he has served less than one year of his ten-year sentence should restrict the Court from ordering his release. While the Court acknowledges the merits of the Government's arguments, it is persuaded to issue Petitioner's release because of his impending 3-20 year stay in MDOC custody and his ultimate reentry plan. Upon his release, Petitioner plans to live with his fiancé [sic] and her parents in a community separate from his prior criminal influences.

*Tubbs-Smith*, 2020 WL 3618511, at *2. This Court has granted compassionate release to applicants with a more extensive, and recent, criminal history than that of Mr. Tarpley. *United States v. Jelinek*, No. 15-20312, 2020 WL 3833125 at *1 and *2, (E.D. Mich. Jul. 8, 2020) (release of an applicant convicted of felon in possession of a firearm and sentenced to 84 months of imprisonment who had a lengthy record of criminal behavior, including assault and battery, malicious destruction of property, possession and use of controlled substances, and domestic violence). Mr. Tarpley's recidivism risk is low. The purposes of his imprisonment have been met and his release would not present any risk to the safety of the community and, to the extent this Court disagrees, any risk will be mitigated by the conditions of his release.

**_Educational training or correctional treatment (19 U.S.C. § 3553(a)(2)(d)):_** Mr. Tarpley was convicted of possession of marijuana in 2013 and he has a number of violations on his conduct record related to possession or use of drugs or alcohol. (ECF

22

17 at 3; Exh. I at 5-6.) He has worked hard to address this while in prison. Unfortunately, although Mr. Tarpley has expressed a desire to complete the Residential Drug Abuse Program ("RDAP"), he is ineligible for the program because of the state detainer on his file. (Exh. I at 2.) Notwithstanding his ineligibility for the RDAP, Mr. Tarpley has completed a drug education program. (*Id.* at 1.) Mr. Tarpley has had no infractions related to drugs or alcohol since 2017. (*Id.* at 4-5.) Prior to 2017, Mr. Tarpley had three infractions relating to possession or use of drugs or alcohol. (*Id.*) Mr. Tarpley has had two minor infractions since 2017 unrelated to drugs or violence. (*Id.*) Mr. Tarpley has kept a clean disciplinary record for the last twelve months. (*Id.*) Mr. Tarpley's disciplinary record supports that he is not in need of further correctional treatment.

Notwithstanding Mr. Tarpley's ill health, he has been able to demonstrate a commitment to personal growth and self-improvement during his term of imprisonment. He has completed nineteen educational courses, including courses in resume writing and interview skills, Microsoft Office programs, Basic Investing I and II, sociology, Spanish 1, drug education, avoiding the money trap and an IRS tax class.

Mr. Tarpley is now a very sick man. He has severe medical conditions that were non-existent prior to his incarceration. These conditions require urgent care which Mr. Tarpley is not receiving in prison. The totality of the circumstances demonstrates that reducing Mr. Tarpley's sentence to time served custody serves the purposes of sentencing

under § 3553(a).

## IV.    Release plan

Mr. Tarpley has maintained contact with his loved ones and has an expansive support system of people who will help facilitate his transition out of BOP custody. He speaks with his wife, Pamela Tarpley, regularly. He also has close contact with his mother, Elmira Thompson. Mr. Tarpley has two sons, Stephen Tarpley Jr. and Christopher Tarpley. Pamela cares for Christopher (who has cerebral palsy and suffers from seizures) in Apopka, Florida. If Mr. Tarpley is released, and in the event that he receives parole for his state sentence, he has a comprehensive release plan that ensures his safe transition to the community and that takes into account the unique circumstances of the COVID-19 pandemic. Mr. Tarpley intends to live with his mother and stepfather, who have been married for nearly 40 years, in his childhood home in Berkeley, Michigan. Mr. Tarpley also has a close relationship with his brother, Alan, and his son, Stephen Jr., who both live in Berkeley and will be on-hand to assist with Mr. Tarpley's transition back into society. Alan or Stephen Jr. will pick Mr. Tarpley up, by car, upon release from custody. Mr. Tarpley will then quarantine for fourteen days at his childhood home, where he will have his own bathroom and bedroom. Mr. Tarpley's mother has confirmed with a local doctor that he will be able to take on Mr. Tarpley as a patient of his family clinic. Mr. Tarpley will also be able to work in the family run cleaning business, Absolute Enterprise Group LLC.

## V.      Supervised Release Conditions

If the Court grants Mr. Tarpley compassionate release, Mr. Tarpley requests the

Court to amend the conditions of his supervised release to facilitate his release plan

(assuming he is granted parole by MDOC).

## VI.    Conclusion

For the foregoing reasons, Mr. Tarpley respectfully requests that the Court grant a

reduction in his sentence to time served and his immediate release.

Dated:        July 20, 2020                    Respectfully submitted,


                                               /s/ Paul E. Bateman, Jr.

                                               Paul E. Bateman, Jr. (P78526)
                                               SIDLEY AUSTIN LLP
                                               One South Dearborn
                                               Chicago, IL 60603
                                               Tel: +1 (312) 853 2223
                                               pbateman@sidley.com

                                               *Attorneys for Defendant*
                                               *Stephen Tarpley*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

              Plaintiff,              Case No. 15-cr-20324

              v.                 Hon. David M. Lawson

STEPHEN M. TARPLEY,

              Defendant.

_____/

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2020, I caused to have electronically filed the foregoing paper with the Court's electronic filing system, which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| Stanley J. Janice, Jr. | Steven M. Vitale |
| U.S. Attorney's Office | Law Offices of Steven M. Vitale |
| 211 W. Fort Street | 363 West Big Beaver Road |
| Suite 2001 | Suite 250 |
| Detroit, MI 48226 | Troy, MI 48084 |
| 313-226-9100 | 248-430-1000 |
| Email: lee.janice@usdoj.gov | Email: steve@vitalelawfirm.com |

SIDLEY AUSTIN LLP
By: /s/ Paul E. Bateman, Jr.
Paul E. Bateman, Jr. (P78526)
One South Dearborn
Chicago, IL 60603
(312) 853-2223
pbateman@sidley.com